IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THOMAS A.  DE SHAZO | } | |
| | } | |
| *Plaintiff* | } | |
| | } | |
| v. | } | CIVIL ACTION NO. H-05-3277 |
| | } | |
| NATIONS ENERGY COMPANY LTD., | } | |
| HASHIM DJOJOHADIKUSUMO, PHILIP | } | |
| HIRSCHLER, PATRICK O'MARA, ECOLO | } | |
| INVESTMENTS LIMITED, AEQUITAS | } | |
| ENERGY, S.A., and NOVOMUNDO | } | |
| TRADING, LTD., | } | |
| | } | |
| *Defendants* | } | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is Defendant Nations Energy Company, Ltd.'s ("Nations Energy's") Rule 12(b)(6) motion to dismiss on the basis of collateral estoppel (Doc. 32).  Plaintiff Thomas De Shazo ("De Shazo") filed two responses (Docs. 35 & 37) to which Nations Energy has replied (Doc. 43).  For the reasons explained below, the court ORDERS that Nations Energy's motion to dismiss (Doc. 32) is GRANTED.

I.        Background and Relevant Facts[1]

De Shazo was a minority shareholder in Ecolo Investments, Limited ("Ecolo"), a Cyprus corporation, whose primary asset is its majority shareholding in Nations Energy.  De Shazo claims that he was defrauded into selling his Ecolo shares through defendants' deliberate misrepresentations of Nations Energy's financial health.  He alleges that defendants Patrick O'Mara ("O'Mara"), Philip Hirschler ("Hirschler"), and Hashim Djojohadikusumo ("Hashim"), acting as

---

[1] The court takes judicial notice of the contents of the court documents attached as Exhibits A-F to Nation Energy's motion to dismiss as matters of public record and permitted under  Fed.  R.  Evid.  201.  *See, e.g., Roe v.  Johnson*, 334 F.  Supp.  2d 415, 420 n.6 (S.D.N.Y. 2004) (noting that "prior complaints filed by [Plaintiff] and opinions issued in these prior actions . . . are public records of which the court may take notice" in resolving a 12(b)(6) motion to dismiss); *see also Davis v.  Bayless*, 70 F.3d 367, 372 n.3 (5 th Cir.  1995) ("Federal Courts are permitted to refer to matters of public record when deciding a 12(b)(6) motion to dismiss.").

corporate officers and representatives of Nations Energy, conspired with one another and with Nations Energy to deliberately misrepresent facts about Nations Energy's finances and its transactions with defendants Aequitas Energy, S.A. ("Aequitas") and NovoMundo Trading Limited ("Novomundo"). *See* Pl.'s 1st Am. Compl. ¶ 28 (Doc. 4). The facts of the fraudulent scheme are complicated, so the following discussion highlights only the relevant portions.

De Shazo asserts that, unbeknownst to him, O'Mara owned and controlled Aequitas and NovoMundo during O'Mara's employment as vice president of marking for Nations and that "O'Mara used these entities to fraudulently divert profits from Nations by purchasing oil from [Karazhanbmunai Jsc. ("KBM"), which Nations Energy owned] at discounted prices, reselling the oil at higher prices to third parties and pocketing the difference for himself." *Id*. De Shazo further claims that all of the defendants knew and approved of O'Mara's conduct "with the specific intent of unjustly enriching themselves." *Id*. ¶ 29. "[J]ustifiably relying upon the representations of O'Mara and Hashim as to the financial condition of [Nations Energy], Plaintiff traded 6% of his interest in Ecolo to Hashim" for consideration in October 1999. *Id*. ¶ 35. The former president of Nations Energy, Williams R. Thomas ("Thomas") had suspicions about O'Mara's relationship with NovoMundo and began investigating. *Id*. ¶¶ 33-34, 39, 41. Thomas fired O'Mara, but Hashim, as chairman of the board for Nations Energy, subsequently retained O'Mara as a consultant and gave him power of attorney to act as KBM's representative in the marketing, sale, and transportation of KBM oil. *Id*. ¶ 39. Thomas cancelled O'Mara's consulting contract and prepared to present his suspicions about the on-going fraud to the Nations Energy Board of Directors (the "Board"). *Id*. ¶ 41. He prepared a memo in anticipation of his presentation, a memo received by De Shazo. *Id*. The Board proved less than sympathetic to Thomas's allegations and fired him at the Board meeting held on February 24, 2000. *Id*. ¶ 41, 47. The next day, De Shazo met with the Board and with O'Mara at a meeting in Houston, Texas. *Id*. ¶ 48. At the meeting on February 25th, the implicated actors denied any wrong-doing and reaffirmed that the legitimacy of NovoMundo and the transactions with

KBM. *See id.* ¶¶ 48-50.  De Shazo believed the defendants.  Although still suspicious, Plaintiff sold his remaining Ecolo shares to O'Mara on September 19, 2001.  *See id.*¶ 59.

On June 13, 2003, De Shazo filed suit in Harris County, Texas against Nations Energy, Ecolo, Aequitas, O'Mara, Hirschler, David O. Wilson ("Wilson"), Hashim, KBM, and John Does I through XX.[2]  *See* Pl.'s Pet. in *De Shazo v. Nations Energy Company, Ltd., et al.*, No. 2003-33367, In the District Court of Harris County, Texas, 281st Judicial District ("Texas State Case") (Doc. 32 Ex. A).  He alleged causes of action based on fraud, negligent misrepresentation, intentional interference with prospective advantage, intentional interference with contract, racketeering, conspiracy, and breach of fiduciary duty.  *Id.* at 29-35.  In January of 2004, he non-suited his claims in the state court proceeding.  Pl.'s Not. of Non-Suit in Texas State Case (Doc. 32 Ex. B).

On July 8, 2004, De Shazo brought his claims in the Court of Queen's Bench of Alberta ("Alberta Trial Court").  *See* Stmt. Cl. in *De Shazo v. Nations Energy Company, Ltd., et al.*, No. 0401-10669, Alberta Trial Court, Judicial District of Calgary (Doc. 32 Ex. D).[3]  On the same factual predicate and against a majority of the same defendants,[4] De Shazo alleged causes of action for (1) an "unlawful and fraudulent scheme" (*id.* ¶ 1(a)); (2) "improper conduct . . . that is oppressive, unfairly prejudicial and that unfairly disregards the interests of the shareholders" (*id.* ¶ 1(b)); (3) "unlawful conspiracy" (*id.* ¶ 1(c)); (4) misrepresentations "made to and relied upon by [De Shazo] concerning the financial affairs of Nations Energy, which resulted in [De Shazo]

---

[2]  "John Does I through XX" represent the agents, employees, independent contractors, subdivisions, franchisees, subsidiaries, or divisions of the defendants and the individuals or entities that allegedly conspired with defendant O'Mara.

[3]  The court notes a slight discrepancy in Nations Energy's Index of Exhibits.  Defendant inadvertently refers to the Plaintiff's Statement of Claim as "Exhibit C."  The Statement of Claim is actually "Exhibit D" as attached to and labeled in Nation Energy's motion to dismiss.  The court, therefore, references the Statement of Claim as "Exhibit D."

[4]  Defendants here included Nations Energy, Hashim, Al Njoo ("Njoo"), Wilson, Ecolo, O'Mara, KBM, Aequitas, and Novomundo.

agreeing to convey shares held by him in Ecolo to Hashim and O'Mara at a price substantially below fair market value" (*id*. ¶ 1(d)); (5) the failure of Nations Energy, Njoo, and Wilson to "prevent the fraudulent activity of Hashim and O'Mara" and for violating "various duties of care" (*id*. ¶ 1(e)); and, finally, for (6) "breach . . . of [defendants'] fiduciary and good faith duties" (*id*. ¶ (f)).

On July 13, 2005, the Alberta Court of Appeal[5] dismissed De Shazo's claims on summary judgment because it found all of his claims barred by Canada's applicable statute of limitations. *See* Mem. J. from Court of Appeal of Alberta, *De Shazo v. Nations Energy Company Ltd., et al.*, 2005 ABCA 241 (Doc. 32 Ex. C). The court noted that, in determining the accrual date for De Shazo's causes of action, one of the "central issues [was] when [De Shazo] knew or in the circumstances ought to have known that he had a claim against the defendants . . ." *Id.* § 1; *see also id*. § 20 ("The limitations issue turns on what De Shazo knew or ought to have known and when he knew or ought to have known it."). After examining the factual allegations at length, the same factual allegations as presented in the case at bar, the Court found that "the information in De Shazo's hands in February 2000 was sufficient for him to bring a claim against the [defendants] for an oppression remedy and in fraud, and to resist a summary judgment application to dismiss such a claim." *Id.* § 34. The Court concluded by reiterating that,

> De Shazo had, in February 2000, nearly all the information about his alleged injury and the participation of the appellants in causing that injury that he had when he filed his statement of claim. He had sufficient knowledge of the material facts to engage the discoverability principle codified in section 3(1)(a) of the *Limitations Act*

*Id.* § 36 (emphasis in original).

On September 19, 2005, De Shazo filed the current lawsuit predicated on the same facts presented in the prior two lawsuits. Here, he asserts causes of action for fraud and fraudulent inducement; RICO violations; intentional interference with contract and/or prospective business

---

[5] The Alberta Trial Court had denied defendants' motion for summary judgment, and defendants appealed.

arrangements; conspiracy; and breach of fiduciary duty.  On November 1, 2005, Nations Energy

filed a motion to dismiss on the basis of comity and res judicata, or, in the alternative, motion to

dismiss on the basis of forum non conveniens (Doc.  8).  The court denied the motion to dismiss

because the Canadian dismissal was not "on the merits," as required to apply the res judicata

defense.  Mem. and Order 4 (Doc.  29).  The order also denied Defendant's motion to dismiss on

the basis of forum non conveniens because Nations Energy had not shown that another forum was

available as it was unwilling to waive the statute of limitations problem in Canada.  *Id.* at 4-5.

Thereafter, Nations Energy filed its current motion to dismiss on the grounds of collateral estoppel,

arguing that the issue of when De Shazo's causes of action accrued has been fully adjudicated in

Canada such that the February 2000 accrual date applies to bar all of his causes of action in the

current suit.  *See* Def.'s Mot.  Dismiss (Doc.  32).

II.        Legal Standard on Collateral Estoppel (Issue Preclusion)

The doctrine of collateral estoppel or issue preclusion "prevents an issue of ultimate

fact that has been determined by a valid and final judgment from being relitigated between the

parties in any future lawsuits." *J.M. Muniz, Incl.  v.  Mercantile Tex.  Credit Corp.*, 833 F.2d 541,

544 (5th Cir.  1988) (citing *United States v.  Price*, 750 F.2d 363, 365 (5th Cir.  1985)).  The court

generally has broad discretion to determine whether collateral estoppel should be applied to preclude

litigation of an issue.  *Id.*  at 543; *Merrill Lynch & Co.  v.  America's Favorite Chicken Co.*, 47 F.3d

1415, 1423 (5th Cir.  1995).    A prior judgment may be given preclusive effect as to a particular

issue even if the actual claims and the subject matter of each suit differ.  *RecoverEdge, L.P. v.

Pentecost*, 44 F.3d 1284, 1291 (5th Cir.  1995).  However, for the purposes of preclusion, "issues are

not identical if the second action involves application of a different legal standard, even though the

factual setting of both suits be the same." *Id.*  (quoting 18 WRIGHT, MILLER & COOPER, *Federal

Practice and Procedure* § 4417, at 165).

When federal court jurisdiction is predicated on a federal question, as in the present case, the court must look to federal law to determine the preclusive effect of the prior foreign country judgment. *Alfadda v. Fenn*, 966 F. Supp. 1317, 1329 (S.D.N.Y. 1997). The Fifth Circuit has held that a prior judgment will preclude relitigation of a factual or legal issue if (1) the issue at stake in the current litigation is identical to the one involved in the prior action; (2) the issue was actually litigated in the prior actions; and (3) the determination of the issue in the prior litigation was a necessary part of the judgment in the earlier action. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 868 (5th Cir. 2000); *RecoverEdge*, 44 F.3d at 1290.

III.        Analysis

A plaintiff's case should be dismissed if the complaint states no claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A plaintiff's case survives a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Nations Energy argues that the issue of when De Shazo's claims accrued has been fully litigated and that the determination in the Alberta Case that De Shazo "knew or should have known" about his injury by February of 2000 has preclusive effect on the accrual date of his injuries in the present litigation. If the court finds preclusion applicable, then De Shazo is barred by the relevant statute of limitations on all his claims, and a Rule 12(b)(6) dismissal is appropriate. To determine the applicability of collateral estoppel in this case, the court must determine whether (1) the issue of the accrual date is identical to the one before the Canadian court; (2) the accrual date was actually litigated in the Canadian court; and whether (3) the determination of the accrual date in the prior action was a necessary part of the judgment. *See Stripling*, 234 F.3d at 868. The parties do not dispute the second and third elements are met under the facts of this case; therefore, the sole issue before the court is whether the issue of the accrual date here is identical to the one decided by the Alberta Court of Appeal. Whether the accrual date issue is identical in both cases turns on whether the Canadian

court used the same legal standard to address the same or substantially similar claims. The court addresses each in turn.

        (1)        Comparison of the Legal Standards

To determine the accrual date of De Shazo's causes of action for fraud, conspiracy, and shareholder oppression, the Alberta Court of Appeal applied Section 3(1) of the Limitations Act, which provides:

> [I]f a claimant does not seek a remedial order within
>     (a)    2 years after the date on which *the claimant first knew, or in the circumstances ought to have known,*
>         (i)    that the injury for which the claimant seeks a remedial order had *occurred,*
>         (ii)    that the injury was attributable to conduct of the defendant, and
>         (iii)    that the injury, assuming liability on the part of the defendant, warrants bringing a proceeding.
> . . .the defendant, on pleading this Act as a defense, is entitled to immunity from liability in respect of the claim.

Limitations Act, R.S.A. 2000, ch. L 12, § 3(1)(a) (Doc. 43 Ex 1) (emphasis added). Thus, the accrual date is calculated under this provision from the time a plaintiff knew or should have known of his injury.

Federal and Texas law on the tolling of the limitations period contain identical "knew or should have known" concepts. In RICO claims, the four-year statute of limitations begins to run when a plaintiff knew or should have known of his injury. *Rotella v. Wood*, 147 F.3d 438, 440 (5th Cir. 1998), *aff'd*, 528 U.S. 549 (2000); *Boulmay v. Rampart 920 Inc.*, 124 Fed. Appx. 889, 891 (5th Cir. 2005). Fraud and fraudulent concealment carry a similar "discovery" rule:

> If . . . the injured party is not aware of the fraud *or the fraud is concealed*, the statute of limitations begins to run from the time the fraud is discovered *or could have been discovered by the defrauded party's exercise of reasonable diligence*. Knowledge of facts that would lead a reasonably prudent person to make inquiry which would lead to a discovery of the fraud is knowledge of the fraud itself.

*Jackson v. Speer*, 974 F.2d 676, 679 (5th Cir. 1992) (internal citations omitted) (emphasis added). In cases where the injury is inherently undiscoverable, Texas' version of the discovery rule applies to postpone the running of the limitations period until the "claimant discovers, or in the exercise of reasonable diligence should have discovered, facts that indicate he has been injured." *Kono Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 607 (5th Cir. 2000).   Under Texas law in general, "a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996).

Comparing the standards, the Alberta Court of Appeal used an identical legal standard as would be applied to De Shazo's accrual date here.  The "knew or should have known" standard is mirrored in both Federal and Texas law dealing with the tolling of the limitations period. De Shazo's attempts to distinguish the standards are without merit.

(2)     Comparison of the Claims

The substance of the claims in both suits are identical.  In Alberta, De Shazo alleged fraud, an oppressive scheme, conspiracy, and breach of fiduciary duties.  Here, De Shazo has alleged *inter alia* fraud, a fraudulent scheme under RICO, conspiracy, and breach of fiduciary duties.  It is clear that fraud and misrepresentation are at the heart of his complaints in both Alberta and in this court.  Moreover, all of the same facts were before the Alberta courts as have been pled in this court. *Compare* Stmt. Cl. ¶ 36, 45-48 (Doc. 32 Ex.  D) *with* De Shazo Aff. in Alberta Trial Court case ¶¶ 24-25 (Doc.  32 Ex.  E) *and with* Pl.'s 1st Am. Compl  ¶ 48-51, 85 (Doc.  4).  Indeed, the Alberta Court of Appeal laid out a detailed time line of the factual events in its Memorandum of Judgment before concluding that De Shazo should have known by February 2000 of his legal injury.  *See* Mem. J. § 21 (Doc. 32 Ex. C).  Similar causes of action predicated on identical facts  demonstrate that the claims in the Alberta Court of Appeal and the claims in this court are substantially the same.

As such, the same legal standard was used to address the same claims in the Alberta Trial Court as in this court. The court concludes that the first element of collateral estoppel, that the issue at stake in the current litigation is identical to the one involved in the prior action, has been satisfied. Therefore, the doctrine of collateral estoppel applies, and De Shazo is precluded from relitigating the issue of when he "knew or should have known" of the injuries giving rise to his cause of action. The accrual date for the purposes of the foregoing limitations analysis is thus February 2000.

(3)     Application of the 2000 accrual date to the statute of limitations analysis

Under Texas and federal law, each of De Shazo's claims in the present case is subject to a either a two or four-year statute of limitations. His RICO and fraud claims are subject to a four-year statute of limitations. *Agency Holding Corp.  v.  Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987) (holding that civil RICO actions are subject to four-year statute of limitations); Tex.  Civ.  Prac. & Rem. Code § 16.004(a)(4) (fraud claims subject to a four-year statute of limitations). As too are his claims for breach of fiduciary duty. Tex.  Civ.  Prac. & Rem. Code § 16.004(a)(5). Under Texas law, claims of intentional interference with prospective business relations and conspiracy are subject to a two-year statute of limitations. *First Nat.  Bank of Eagle Pass v.  Levine*, 721 S.W.2d 287, 289 (Tex.  1986) (holding that trespass encompasses claim for tortious interference with contract such that two-year statute of limitations set forth in Tex. Civ.  Prac. &  Rem. Code § 16.003(a) applies); *Mayes v. Stewart*, 11 S.W.3d 440, 453 (Tex. App.–Houston [14th Dist.] 2000, pet. denied) ("The statute of limitations for conspiracy is two years.") (citing. Tex.  Civ.  Prac. & Rem. Code § 16.003(a) (Vernon Supp. 1999)). De Shazo knew or should have known of his injury by February 2000, but did not file the current suit until September 19, 2005, more than even the maximum four-year limitations period for his RICO and fraud claims.  All of De Shazo's causes of action are, therefore, barred by the applicable statute of limitations. His case must be dismissed under Rule 12(b)(6).

IV.          Conclusion

The court recognizes that there is some overlap in Nation's prior arguments for dismissal based on res judicata and its current arguments for dismissal based on collateral estoppel. The two theories are not in fact identical.  Accepting Nation's res judicata argument required the court to find that De Shazo's entire suit was barred based on the Canadian court's application of *Canadian* statute of limitations law.  Under collateral estoppel principles, the issue of when De Shazo knew or should have known about his injury has already been fully adjudicated, and the use of the February 2000 as the date of accrual necessarily means that De Shazo's claims are time-barred under Texas and federal law.  Accordingly, it is hereby

**ORDERED** that Defendants' motion to dismiss on the basis of collateral estoppel (Doc.  32) is **GRANTED**.

SIGNED at Houston, Texas, this 27th day of March, 2007.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE